**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Daniel T. Barrett,

Plaintiff,

v.

United States of America, United States Department of Labor, State of Minnesota, County of Anoka, City of Fridley, Attorney Robert J. Bruno, and Karen M. Barrett,

Defendants.

Civil No. 00-1195 (DWF/SRN)

**MEMORANDUM OPINION AND ORDER**

---

Daniel T. Barrett, 10846 Buchanan Street, Blaine, MN 55434, appeared *pro se.*

Patricia Cangemi, Assistant United States Attorney, Office of the United States Attorney, 600 United States Courthouse, 300 Fourth Street South, Minneapolis, MN 55415, appeared on behalf of Defendants United States of America and United States Department of Labor.

Cynthia Jahnke, Esq., Office of the Minnesota Attorney General, 445 Minnesota Street, Saint Paul, MN 55101, appeared on behalf of Defendant State of Minnesota.

Robert Goodell, Esq.,Office of the Anoka County Attorney, Anoka County Government Center, 2100 Third Avenue, Anoka, MN 55303-2265, appeared on behalf of Defendant Anoka County Attorney.

Mary Tietjen, Esq., League of Minnesota Cities Insurance Trust, 145 University Avenue West, Saint Paul, MN 55103, appeared on behalf of Defendant City of Fridley.

Robert Bruno, Esq., Bruno Law Office, 107 Professional Plaza, 1601 Highway 13E, Burnsville, MN 55337, appeared on behalf of himself and Defendant Karen Barrett.

---

**Introduction**

The above-entitled matter came on for hearing before the undersigned United States District Judge on August 25, 2000, pursuant to Motions to Dismiss by each Defendant and a Motion for Sanctions by Defendant Robert J. Bruno. In the Complaint, Plaintiff apparently

AUG 29 2000
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD AUG 29 2000
DEPUTY CLERK

alleges a variety of Constitutional violations by the various Defendants. For the reasons set forth below, the motions of the Defendants are granted.

During the hearing, Plaintiff Daniel T. Barrett also presented the Court with a motion, styled as a "Writ of Mandamus," asking the Court to compel the United States Attorney to provide Mr. Barrett with legal representation pursuant to 42 U.S.C. § 2000h-2. That motion is denied.

**Background**

Plaintiff Daniel T. Barrett was married to Defendant Karen M. Barrett from 1992 to 1998, at which time Karen Barrett sought to dissolve their marriage. Karen Barrett was represented by Defendant Robert J. Bruno in the dissolution proceeding. The Honorable Edward W. Bearse, District Court Judge for the Tenth Judicial District of the State of Minnesota, presided over the dissolution proceedings. Judge Bearse awarded custody of the couple's minor children to Karen Barrett and ordered Daniel Barrett to pay child support.

Daniel Barrett attempted to appeal the family court decision. However, when his petition to proceed *in forma pauperis* was denied by the Minnesota Court of Appeals, he failed to pay the requisite filing fee and his petition for review was denied. Daniel Barrett sought review of that decision by the Supreme Court of Minnesota, but his petition was again denied. He then sought a writ of certiorari from the United States Supreme Court; his petition was denied.

On April 6, 1999, Mr. Barrett contacted the Fridley Police Department and alleged that Karen Barrett had, in the autumn of 1997, deprived him of his parental rights.[1] The Fridley

---

[1] The allegation apparently stemmed from the earliest days of the dissolution proceedings. Ms. Barrett removed the two minor children from the family home and went to live with her father in Minneapolis for a total of 16 days before establishing her own residence with (continued...)

Police Department conducted an investigation and then turned its file over to the Anoka County Attorney's Office (the "ACA").

The ACA reviewed the file. Citing the length of time between the alleged crime, the report and because of the lack of any corroborating evidence to support Mr. Barrett's allegations, the availability of a civil remedy in family court, and the fact that Mr. Barrett knew where the children were at all times, the ACA officially declined to file charges against Ms. Barrett.

At some point, Daniel Barrett apparently contacted the United States Attorney's Office in Minneapolis and requested that they pursue his rights for him. While the Complaint does not specify the basis for that request, Mr. Barrett's current "Writ of Mandamus" requests representation pursuant to 42 U.S.C. § 2000h-2, which states:

> Whenever an action has been commenced in any court of the United States seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, color, religion, sex or national origin, the Attorney General for or in the name of the United States may intervene in such action upon timely application if the Attorney General certifies that the case is of general public importance.

The United States Attorney's Office declined to involve itself in Mr. Barrett's situation.

To enforce the existing child support award, a garnishment summons was served on February 18, 2000. Mr. Barrett alleges "[t]hat the United States Department of Labor and the laws of garnishment are not being enforced to the content of the law." He further alleges that Section 1671 of U.S. Code Title 15 (the Consumer Credit Protection Act) is unconstitutional.

Mr. Barrett has brought this action against the United States of America, the United States Department of Labor, the State of Minnesota, Anoka County, the City of Fridley,

---

[1](...continued)
the children.

Robert Bruno, and Karen Barrett. In his Complaint, Mr. Barrett alleges that Karen Barrett and Robert Bruno violated 42 U.S.C, §§ 1981, 1982, 1983, and 1985 in depriving him of his parental rights; violated 15 U.S.C. § 1671; violated Minn. Stat. § 609.26; and violated the takings clause of the United States Constitution. Mr. Barrett alleges that the City of Fridley, through its police department, committed "nonfeasance in a criminal matter." Mr. Barrett alleges that the ACA similarly committed "nonfeasance in a criminal matter." Mr. Barrett alleges that the Anoka County child support enforcement agency violated 42 U.S.C. §§ 1981, 1982, 1983, and 1985 and violated 15 U.S.C. § 1671.[2] Mr. Barrett alleges that the United States Attorney failed to represent him and thereby violated 42 U.S.C. §§ 1981, 1983, 1985, 2000b, and 2000h-2. Mr. Barrett alleges that the U.S. Department of Labor failed to enforce 15 U.S.C. § 1671. Mr. Barrett alleges that unspecified actors representing the State of Minnesota violated his Fifth Amendment rights; violated his Fourteenth Amendment rights; violated 42 U.S.C. § 1981, 1982, 1983, and 1985; violated 15 U.S.C. § 1671; committed mail fraud and racketeering; and deprived him of his parental rights. Mr. Barrett further asserts that Chapter 518 of the Minnesota Statutes (which governs dissolution of marriage), 15 U.S.C. § 1671 (the Consumer Credit Protection Act), the Minnesota Code of Judicial Conduct, the Minnesota Family Court Rules, and the rules governing the Minnesota Board of Judicial Standards are unconstitutional and must be repealed.

[2] Although the Complaint references acts committed by the child support enforcement agency in Anoka County, that agency has not been properly served with the Complaint and has thus not responded.

## Discussion

### 1. Standard of Review

This matter is before the Court on several motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In deciding a motion to dismiss, the Court must assume all facts in the Complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court grants a motion to dismiss only if it is clear beyond any doubt that no relief could be granted under any set of facts consistent with the allegations in the Complaint. *Id.* The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *Nietzke v. Williams*, 490 U.S. 319, 326 (1989). The Court need not resolve all questions of law in a manner which favors the complainant; rather, the Court may dismiss a claim founded upon a legal theory which is "close but ultimately unavailing." *Id.* at 327.

In the alternative, the moving parties have requested that the Court consider this motion a motion for summary judgment. Because the case can be dismissed on the pleadings without reference to extraneous materials, the Court declines to treat this motion as one for summary judgment.

### 2. Claims Under 15 U.S.C. § 1671

Mr. Barrett has asserted that the State of Minnesota, Anoka County, Karen Barrett, and Robert Bruno have violated 15 U.S.C. § 1671, *et seq.* by garnishing his wages to fulfill a child support obligation. Generally, this provision of the U.S. Code limits garnishment to 25% of a debtor's disposable earnings. However, § 1673(b)(1)(A) specifically states that the limitations imposed by the statute do not apply to "any order for the support of any person issued by a court of competent jurisdiction . . . ." On its face, Mr. Barrett's Complaint references a violation of

15 U.S.C. § 1671, *et seq.* with respect to garnishment for enforcement of a judgment for child support. The Consumer Credit Protection Act does not apply to garnishments which are related to child support orders. All of Mr. Barrett's claims for violation of 15 U.S.C. § 1671, *et seq.*, as against all Defendants, should be dismissed for failure to state a claim for which relief might be granted.

**3. The Federal Defendants**

In his Complaint, Mr. Barrett asserts a claim against the United States Department of Labor, apparently for failing to intervene on his behalf with respect to the alleged violations of 15 U.S.C. § 1671, *et seq*. This claim must fail as a matter of law. First, the Court is inclined to agree with the United States that this "decision not to act" is unreviewable pursuant to *Heckler v. Chaney*, 470 U.S. 821 (1985). However, even if this case presents one of those rare instances where agency inaction *is* reviewable, the Court has already noted that there was, based upon the facts presented in the Complaint, no violation of 15 U.S.C. § 1671, *et seq.* to be addressed.

Mr. Barrett similarly seems to allege violation of his constitutional rights premised upon the failure of the United States Attorney to intervene on his behalf in his on-going litigation. He has not, however, asserted the basis for any right to have the United States Attorney intervene on his behalf. He refers, in his "Writ of Mandamus," to 42 U.S.C. § 2000h-2. This statute, however, gives the Attorney General of the United States the *option* of intervening in discrimination suits of particular public import; it does not create any *obligation* for the United States to intervene on behalf of an individual. Similarly, Mr. Barrett has not alleged which provision of the Constitution was violated by this inaction on the part of the United States Attorney. In short, Mr. Barrett has failed to state a claim for which relief can be granted.

**4. The State of Minnesota**

Mr. Barrett has alleged a laundry list of claims for actions committed by representatives for the State of Minnesota. The majority of his claims, however, are constitutional challenges to the child support award issued by Judge Edward Bearse of Minnesota's Tenth Judicial District. For all of those claims, this Court lacks subject matter jurisdiction pursuant to the Rooker-Feldman doctrine. Under the Rooker-Feldman doctrine, state court decisions may only be reviewed by the United States Supreme Court, not by the lower federal courts. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

Mr. Barrett also seems to assert that the Minnesota State government, in general, is maintaining an unconstitutional system which deprives citizens of equal protection, due process of law, and a fair trial. To the extent that Mr. Barrett is seeking to challenge directly the acts of the State of Minnesota, his claims are barred by the Eleventh Amendment which grants states immunity from suit in federal court. *See, e.g., Quern v. Jordan*, 440 U.S. 332 (1979) (holding that nothing in 42 U.S.C. § 1983 abrogates the states' Eleventh Amendment immunity from suit in federal court). To the extent that Mr. Barrett seeks to challenge directly the constitutionality of state action, he must do so in state court because this Court lacks the jurisdiction to hear his Complaint.

**5. Anoka County**

Mr. Barrett's claims against Anoka County are actually aimed at two different agencies within the county government: the Anoka County Attorney and Anoka County's child support enforcement agency.

With respect to the Anoka County Attorney, Mr. Barrett has made a general claim of "nonfeasance in a criminal matter." This claim apparently rests upon the decision of Assistant County Attorney Diane Savage not to pursue charges against Karen Barrett for allegedly depriving Mr. Barrett of his parental rights. "The decisions relating to the initiation and dismissal of cases are at the very heart of a prosecutor's function as an advocate for the state, and absolute immunity thus attaches to those decisions." *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1268 (8th Cir. 1996). Absolute immunity works as a complete bar to all suits premised upon protected activities; Mr. Barrett's claims premised upon the decision of the Anoka County Attorney not to initiate action against Karen Barrett cannot stand. Mr. Barrett also seems to assert that the ACA failed to engage in an appropriate investigation of his charges against Karen Barrett. However, as the County points out, the ACA only loses the shield of absolute immunity when it undertakes a traditionally investigatory function–not when it declines to do so. At all times, the ACA was acting within their traditional prosecutorial role and is thus shielded by absolute immunity.

With respect to the Anoka County child support enforcement agency, Mr. Barrett has not properly served that agency and thus has no pending claims against them which this Court can recognize. However, the Court notes that the claims alleged by Mr. Barrett in his Complaint would not withstand a motion to dismiss even if Mr. Barrett had properly serviced the child support enforcement agency.

Mr. Barrett has alleged violations of 42 U.S.C. §§ 1981, 1982, 1983, and 1985.[3] Specifically, Mr. Barrett cites the Anoka County child support enforcement agency's use of the garnishment procedure to collect child support arrearages. At the outset, Mr. Barrett's claims under 42 U.S.C. §§ 1981 and 1982 must fail because Mr. Barrett does not allege any racial animus for the child support agency's actions. Similarly, Mr. Barrett's claims under 42 U.S.C. § 1985 must fail because Mr. Barrett does not allege that the child support enforcement agency enforced existing child support orders in a discriminatory fashion.[4] Finally, his claims under 42 U.S.C. § 1983 must fail because Mr. Barrett has simply not alleged any violation of any constitutional right: he has not alleged any defect–other than the alleged violation of 15 U.S.C. § 1671–in the process through which the child support enforcement agency carries out its legal duties.

**6. The City of Fridley**

Mr. Barrett's claim against the City of Fridley seems to stem solely from the alleged failure of the Fridley Police Department to adequately investigate Mr. Barrett's claim that his wife had deprived him of his parental rights. Mr. Barrett's claim against the City of Fridley should be dismissed.

---

[3] Mr. Barrett also alleged that the Anoka County child support enforcement agency violated 15 U.S.C. § 1671, *et seq*. As noted above, Mr. Barrett's claims under that statute are wholly misplaced.

[4] Mr. Barrett does seem to imply that child support orders are granted in a gender discriminatory manner by the judges in Anoka County and the State of Minnesota. There is a difference, though, between the granting of an order and the enforcement of it. The county child support enforcement agency merely enforces existing orders; it does not determine who should be obligated to pay child support and in what amount. Mr. Barrett does not allege, anywhere in his Complaint, that the child support enforcement agency undertakes garnishment proceedings or other enforcement measures in a discriminatory way.

To the extent that Mr. Barrett intends to assert some tort claim against the City of Fridley, his claim is barred by the doctrine of official immunity. A determination of probable cause to pursue a citizen's complaint is an exercise of judgment or discretion which is entitled to official immunity. *See Elwood v. County of Rice*, 423 N.W.2d 671, 677 (Minn. 1988); *Pletan v. Gaines*, 494 N.W.2d 38, 41 (Minn. 1992). The City of Fridley is entitled to the benefit of the investigator's official immunity for his decisions. *See Pletan*, 494 N.W.2d at 42.

Moreover, to the extent that Mr. Barrett intends to assert some constitutional claim against the City of Fridley, his claims fail as a matter of law. Defendant City of Fridley cites *Monell v. Department of Social Services of City of New York, et al.*, 436 U.S. 658 (1978), for the proposition that a municipality may only be liable for the unconstitutional actions of its employees if those actions were pursuant to a formal policy or informal custom of the municipality. Mr. Barrett has made no allegation that the officer who allegedly failed to zealously investigate Mr. Barrett's claim was acting pursuant to some unconstitutional policy or custom of the police force. For example, Mr. Barrett has not suggested that the Fridley Police Department routinely disregarded claims of deprivation of parental rights made by fathers or the claims of men more generally. Rather, Mr. Barrett has simply asserted that, on this one occasion, this officer failed to adequately investigate his claims. Accordingly, Mr. Barrett's Complaint against the City of Fridley should be dismissed.

**7. Robert Bruno and Karen Barrett**

In addition to his claim that Defendants Bruno and Karen Barrett violated 15 U.S.C. § 1671, *et seq.* (which should be dismissed for the reasons stated *supra*), Mr. Barrett has alleged that these Defendants violated 42 U.S.C. §§ 1981, 1982, 1983, and 1985; violated the

takings clause of the United States Constitution; and violated Minn. Stat. § 609.26. All of these claims are utterly without legal support.

First, Minn. Stat. § 609.26 is a criminal statute and does not create a civil cause of action.

Second, the takings clause of the United States Constitution applies to state action only. The Fifth Amendment to the United States Constitution states that "private property [shall not] be taken for public use, without just compensation." Similarly, a claim brought under 42 U.S.C. § 1983 for deprivation of constitutional rights can only stand against a defendant who is acting under color of state law. Karen Barrett is a private citizen. There is no allegation in the Complaint that she held herself out as an agent of the state. Moreover, the Eighth Circuit has squarely held that an attorney representing one party to a divorce action is not acting under color of state law for purposes of an action under 42 U.S.C. § 1983. In *Dotlich v. Kane*, 497 F.2d 390 (8th Cir. 1974), the Eighth Circuit affirmed the District Court's dismissal of a § 1983 claim against a divorce attorney because the attorney, in representing the plaintiff's spouse in a dissolution proceeding, was not acting under color of state law. Thus, the claims under the takings clause and 42 U.S.C. § 1983, as against Robert Bruno and Karen Barrett, should be dismissed.

Third, 42 U.S.C. §§ 1981 and 1982 prohibit discrimination on the basis of race and do not provide remedies for alleged discrimination based on any other classification. The Complaint is silent as to Mr. Barrett's race, and he makes no allegation that he was discriminated against on the basis of his race.

Finally, although 42 U.S.C. § 1985 does prohibit conspiracy to deprive someone of equal protection under the laws when such deprivation is motivated by gender (the only class basis the Court can conceive might apply here), Mr. Barrett has not alleged and the facts presented do not

imply that Robert Bruno and Karen Barrett were motivated by any class-based discriminatory intent. In other words, assuming for the sake of argument that Robert Bruno and Karen Barrett did conspire to deprive Mr. Barrett of equal protection under the laws,[5] there is nothing either explicit or implicit in the Complaint to suggest that they were motivated to deprive him of his rights *because he is a man*.

Both Karen Barrett and Robert Bruno have requested that the Court impose Rule 11 sanctions on Mr. Barrett both for bringing a frivolous claim and for bringing a claim for an improper purpose. The Court agrees that such sanctions would be appropriate in this matter. Barrett's claims are wholly unfounded and cannot be based on more than the most cursory inquiry into the law. Mr. Barrett's attempt to harass his ex-wife and to attempt to re-litigate a matter which has already been settled in an appropriate forum is transparent. For Mr. Barrett to force Karen Barrett and her attorney both to incur the costs of defending a federal lawsuit premised upon such shaky legal arguments offends any reasonable notion of fundamental fairness and is contrary to the interests of justice. The Court finds that Rule 11 sanctions in an amount consistent with the reasonable attorney's fees and costs incurred by Karen Barrett and Robert Bruno should be imposed upon Daniel Barrett for this frivolous and harassing litigation against his ex-wife and her counsel.

For the reasons stated, **IT IS HEREBY ORDERED:**

---

[5] That is an assumption of mammoth proportions: to suggest that the typical legal maneuvering associated with a marriage dissolution amounts to a conspiracy to deprive one party of equal protection under the laws is to set the entire adversarial system on its head. In other words, Mr. Barrett's § 1985 claims fail for many reasons; his failure to assert any class-based animus is merely the most readily articulated.

1. Plaintiff Daniel T. Barrett's Motion for a Writ of Mandamus compelling the United States to provide him with legal representation (unfiled) is **DENIED**;

2. Defendant City of Fridley's Motion to Dismiss (Doc. No. 6) is **GRANTED**;

3. Defendant State of Minnesota's Motion to Dismiss (Doc. No. 18) is **GRANTED**;

4. Defendant Karen Barrett's Motion to Dismiss (Doc. No. 19) is **GRANTED**;

5. Defendant Robert Bruno's Motion to Dismiss (Doc. No. 21) is **GRANTED**;

6. Defendants United States of America and United States Department of Labor's Motion to Dismiss (Doc. No. 28) is **GRANTED**;

7. Defendant Anoka County's Motion to Dismiss (Doc. No. 32) is **GRANTED**;

8. Defendant Robert Bruno's Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure (Doc. No. 21) and Defendant Karen Barrett's Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure (Doc. No. 26) are **GRANTED**;

9. Defendants Robert Bruno and Karen Barrett are directed to submit an affidavit detailing claimed attorney's fees and costs for purposes of imposing sanctions upon Plaintiff pursuant to Rule 11 of the Federal Rules of Civil Procedure; and

10. The **COMPLAINT** is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 29th, 2000

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: AUG 30 2000

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.